UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| KAREN E. MARTIN,<br><br>    Plaintiff,<br><br>v.<br><br>BAPTIST HEALTH RICHMOND,<br><br>    Defendant. | Civil No. 5:20-cv-00443-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

Plaintiff Karen Martin alleges that she was fired from Baptist Heath Richmond because of her race in violation of Title VII of the Civil Rights Act and the Kentucky Civil Rights Act. [R. 1.]  In support of her position, Ms. Martin presents circumstantial evidence of single-motive discrimination and argues in the alternative that an unlawful mixed-motive influenced Baptist's decision.  [R. 1-1 at 11-12; R. 51 at 7.]  In response, Defendant Baptist moves for summary judgment.  [R. 48.]  For the following reasons, Baptist's Motion [R. 48] is **DENIED.**

**I**

Beginning around September 2019, Plaintiff Karen Martin, an African American woman, was employed by Defendant Baptist Health Richmond hospital.  [R. 1-1 at 4; R. 48-1 at 2.] While employed by Baptist, Ms. Martin's role at the hospital changed three times, culminating with her serving as a cashier in the hospital's cafeteria.  [R. 48-1 at 2.]  Ms. Martin characterizes her work performance during her tenure at Baptist as "excellent."  [R. 1-1.]  During the five months she was employed at Baptist, however, the hospital's human resources department

documented seven instances of poor work performance, including instances of Ms. Martin using her cell phone during her shift, being "extremely loud and argumentative" when confronted about rule breaking, multiple absences, incorrectly recording her break times, and "refus[ing] to perform all of her job duties by declining to load and unload boxes, and failing to assist adequately throughout her shift." [R. 48-1 at 2-3; R. 48-4 at 2.]

Plaintiff Martin remained employed at Baptist until she was terminated on February 10, 2020. [R. 48-1 at 4.] Three days before her termination, on Friday, February 7, Ms. Martin was working in the cafeteria as a cashier. *Id.* at 3. Though she alleges that "[t]here were no [other] cashiers present" in the cafeteria, at least one other unnamed employee was nearby. [*Compare* R. 1-1 at 5 *with* R. 48-3 at 6.] At approximately 2:00 p.m., as recorded by Baptist's surveillance system, Ms. Martin "grabbed some candy bars from the candy display in the cafeteria and walked back into the kitchen, without paying for them." [R. 48-1 at 3.] At 2:30 p.m., Ms. Martin "ended her shift and left the cafeteria without paying for the candy bars." *Id.* The unnamed employee witnessed Ms. Martin take the candy bars and soon informed Supervisor Dani Martin of the apparent theft. [R. 48-3 at 6.] Supervisor Martin then informed Joy Benedict, Baptist's Director of Human Resources. [R. 48-1 at 4.]

When Plaintiff Martin returned to work on February 10, Supervisor Martin and Director Benedict called her into a meeting. [R. 48-1 at 4.] In the meeting, Plaintiff Martin "admitted to taking the candy bars without paying for them," and "acknowledged [that] she made no attempt to pay for the candy later in the day on February 7, 2020, during her off days on February 8-9, 2020, or at any point prior to her meeting […]." *Id.* Based on her admission, Baptist terminated her employment. *Id.* Despite having a documented record of subpar work performance,

2

however, Ms. Martin's termination letter only provides that she was terminated "for pilfering" the candy bars. [R. 51-9.]

Now, Plaintiff Martin argues that circumstantial evidence proves that Baptist terminated her because of her race in violation of Title VII and the Kentucky Civil Rights Act. [R. 1-1 at 11-12.] In support of her contention, Ms. Martin explains that she is diabetic, was planning to pay for the candy bars later, and could not purchase the candy bars at the time she took them because she was the only cashier on duty and because Baptist does not permit its cashiers to sell themselves items. [R. 1-1 at 5.] Consequently, Ms. Martin argues that her taking of the candy bars should not have led to her termination. *See id.* In further support, Ms. Martin contends that Baptist treated rule violations committed by non-protected workers differently than they treated hers. For example, she contends that co-worker Tracy Wolfinbarger took candy bars from the cafeteria and paid later without termination, that co-workers Gena Ray and Kimberly Simpson allowed their cash registers to become short without consequence, and that co-worker Mike Carter committed sexual assault but was still given "the luxury of resigning." [R. 51 at 3-4, 9-10; R. 51-1.]

Alternatively, even if she cannot establish a *prima facie* case of single-motive discrimination by circumstantial evidence alone, Ms. Martin contends that her claims survive summary judgment under a mixed-motive theory of discrimination because her race was at least a motivating factor in the decision to terminate her. [R. 51 at 7-8.; *see also White v. Baxter Healthcare Corp.*, 533 F.3d 381, 401 (6th Cir. 2008) (describing typical Title VII cases as based on a theory of "single-motive discrimination.")]. In opposition, Baptist argues that Ms. Martin fails to establish a *prima facie* case of circumstantial racial discrimination because she does not point to an appropriate comparator and because her work performance rendered her unqualified

3

to remain employed as a cashier. [R. 48-1 at 7-10.] Baptist also argues that Ms. Martin's termination for pilfering was not a pretextual reason used to terminate her because of her race. *Id.* at 10-11. Both sides having fully briefed their positions, this matter is now ripe for review.

## II

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259

F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

### A

Under Title VII of the Civil Rights Act of 1964, employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).[1] A plaintiff can prove her claims by either direct or circumstantial evidence of intentional discrimination. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648–49 (6th Cir. 2012). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003)); *see also Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004) (direct evidence "proves the existence of a fact without requiring any inferences"). On the other hand, circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570.

Ms. Martin first argues that her race was the single motive for her termination. In support, she provides circumstantial evidence of race discrimination, including an assertion that she "performed her job well and had an excellent attendance record." [R. 1-1 at 4.] Ms. Martin

---

[1] The Sixth Circuit has ruled "[b]ecause Ky. Rev. St. Chapter 344 mirrors Title VII of the Civil Rights Act of 1964, we use the federal standards for evaluation of race discrimination claims." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000). Because KCRA claims are analyzed using the same standard as Title VII, the Court will analyze both claims together.

further argues that several of her Caucasian co-workers pilfered from Baptist, broke rules, and/or performed their duties negligently, but were not terminated from their employment as she was. [R. 51-1; R. 51-5.]

  The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to discrimination claims brought under Title VII based on circumstantial evidence. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). Under *McDonnell Douglas,* the plaintiff must first establish a *prima facie* case of discrimination. *Schoonmaker v. Spartan Graphics Leasing, LLC,* 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000)). If successful, the burden then shifts to the defendant employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id.* (citation omitted). Once this showing has been made, the burden of production shifts back to the plaintiff who must show that the employer's explanation was merely pretext for intentional discrimination. *Id.* (citation omitted). Importantly, the burden of production shifts throughout the analysis, but the burden of persuasion remains on the plaintiff to demonstrate that membership in the protected class is "the 'but-for' cause of their employer's adverse action." *Id.* (quoting *Geiger,* 579 F.3d at 620) (internal quotations marks omitted).

  Under the *McDonnell-Douglas* framework, Ms. Martin must first establish a *prima facie* case of race discrimination by showing that: "(1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified [for the position at issue], and (4) she was treated differently than [or replaced by] similarly-situated male and/or nonminority employees for the same or similar conduct." *McClain v. NorthWest Community Corrections Center Judicial Corrections Bd.,* 440 F.3d 320, 332 (6th Cir. 2006); *see also Lewis v. Norfolk S. Ry. Co.*, 590 F. App'x 467, 469 (6th Cir. 2014) (quoting *White*, 533 F.3d at 391).

6

Here, there is no dispute that Ms. Martin, as an African American woman, is a member of a protected class in the context of her race discrimination claims. Likewise, there is no dispute that she was subjected to an adverse employment action. Instead, Baptist argues that it is owed summary judgment because Ms. Martin cannot prove that she was treated differently than a similarly situated, non-protected employee, or that she was qualified for her cashier position. [R. 48-1 at 7-9.]

**1**

**a**

The Court turns first to the question of the similarity of the non-protected employees who Ms. Martin identifies. In her Motion, Ms. Martin identifies the following Caucasian co-workers as "similarly situated" comparators: Gena Ray, Kimberly Simpson, Mike Carter, and Tracy Wolfinbarger. [R. 51 at 1-2, 9-10.] Baptist contests the sufficiency of each identified comparator. [R. 48-1 at 7-9.] "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citations omitted). Put differently, Ms. Martin must show that the comparable employees are similarly situated "*in all respects*." *Id.* at 583.

While this standard is not necessarily construed by courts to require an exact comparison between the plaintiff and other employees "in every single aspect of their employment," *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998), Ms. Martin still must show that "similarity between the compared employees [] exist[s] in all relevant aspects of

7

their respective employment circumstances." *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). Indeed, "[a]bsent proof that other employees were similarly situated, it is not possible to raise an inference of discrimination." *Nickell v. Memphis Light, Gas & Water Div.*, 16 F. App'x 401, 402 (6th Cir. 2001) (quoting *Shah v. General Elec. Co.*, 816 F.2d 264, 270 (6th Cir. 1987)).

Ms. Martin first argues that Gena Ray, Kimberly Simpson, and Tracy Wolfinbarger, all Caucasian, are similarly situated comparators. Though Ms. Martin does not contend that Ray or Simpson took candy bars from the cafeteria and did not pay for them, she argues that they are similarly situated to her because, during one shift in 2019, a cash register that they each used had an eleven-dollar deficient balance at the end of their shifts. [R. 51 at 2; R. 51-3.] Though Ms. Martin admittedly cannot prove the eleven-dollar deficit occurred intentionally, she likens the deficit to pilfering by negligence. *See id.* Ms. Martin also provides an affidavit of another co-worker, Ciji Estill, who indicates that Gena Ray "would sometimes give coworkers food including bar coded items such as soda and energy drinks" for free or with a discount. [R. 51-5 at 4.]

Next, Ms. Martin provides an affidavit of Tracy Wolfinbarger who admits to having taken candy bars from the cafeteria and paid later (as Ms. Martin alleges to have been her intention when she took candy bars) but faced no consequence from Baptist. [R. 51-1 at 2.] Finally, Ms. Martin alleges that Mike Carter, a Caucasian chef at Baptist, "sexually assaulted multiple women" and treated an African American supervisor "like a second-class citizen," but was still permitted the "luxury of resigning." *Id.* at 3-4. Accordingly, Ms. Martin contends that Gena Ray, Kimberly Simpson, and Tracy Wolfinbarger are similarly situated comparators because they also engaged in pilfering—either intentionally or negligently—but were not

8

terminated, and that Mike Carter is a comparator who acted more egregiously than she did but still received greater lenience. [R. 51 at 3.]

In opposition, Baptist argues that the true comparators in this case are those who also engaged in theft. For example, Baptist argues that two Caucasian individuals, a former cashier and a former pharmacist, were caught stealing money and medication from Baptist and were both immediately terminated. [R. 48-1 at 8.] Further, Baptist argues that no records indicate that Gena Ray or Kimberly Simpson intentionally "took money" from the cash registers to have mandated immediate termination. [R. 57 at 2.] Consequently, because Baptist has a policy that theft of its property is "[c]ause for dismissal without notice" and because the terminated cashier, the terminated pharmacist, and Ms. Martin were all treated equally, Baptist argues that she cannot establish a *prima facie* case of race discrimination. *Id.* at 5, 8-9.

Upon review, the Court finds that Gena Ray and Tracy Wolfinbarger may be similarly situated comparators to Ms. Martin, while Kimberly Simpson and Mike Carter are not. First, the Court agrees with Baptist that Kimberly Simpson is not an appropriate comparator because there is no evidence that she intentionally pilfered money from Baptist's cash registers. Though Ms. Martin argues that Simpson should be deemed her comparator even if Simpson's register ran short by negligence, the Court disagrees because Ms. Martin's pilfering of the candy bars was admittedly intentional and "[a] plaintiff cannot establish a reasonable inference of discriminatory motive based on her 'employer's more severe treatment of more egregious circumstances.'" [*See* R. 51 at 5; *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (internal citations omitted).] Similarly, the Court finds Mike Carter to be an inappropriate comparator to Ms. Martin because his employment at Baptist ended due to an alleged sexual assault, not due to pilfering. [R. 51 at 3-4.] Though Ms. Martin questions why he was permitted

9

to resign while she was terminated, both were ultimately removed from employment at Baptist, and it is not the Court's place to question the manner of their removal. *Smith v. Leggett Wire Co.*, 220 F3d 752, 763 (6th Cir. 2000) ("[I]t is inappropriate for the judiciary to substitute its judgment for that of management.").]

But, when making all reasonable inferences in favor of Ms. Martin, there exists a genuine issue of material fact as to whether Gena Ray and Tracy Wolfinbarger are similarly situated comparators to her. Though Ray's alleged negligent management of her cash register, like Simpson's, is not similar conduct to Ms. Martin's pilfering to render her a comparator, Ciji Estill's affidavit indicates that Ray regularly pilfered cafeteria food items and was not punished. [R. 51-5 at 4.] Similarly, in his affidavit, Tracy Wolfinbarger admits to pilfering without consequence. [R. 51-1 at 2.] Though the conduct of Ray and Wolfinbarger appears identical to Martin's, their punishments clearly differed. *See id.* Accordingly, Ms. Martin has sufficiently satisfied the "similarly situated comparator" prong of the applicable *prima facie* case as to survive summary judgment.[2]

b

The Court next turns to Baptist's argument that Ms. Martin was not qualified to remain employed as a cashier in its cafeteria. The *prima facie* case of a race discrimination claim "is not onerous" and poses "a burden easily met." *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004). The purpose of the qualification prong of the *McDonnell Douglas prima facie* case is to show

---

[2] The Court notes that neither party analyzed whether Baptist was aware of Ray and Wolfinbarger's alleged pilfering or whether Baptist actively chose to not terminate them. If Baptist was not aware of the conduct, it is questionable whether Ray and Wolfinbarger would remain suitable comparators "*in all respects*" to Ms. Martin. *Mitchell*, 964 F.2d at 583. Because this potential difference was not addressed, however, there remains a genuine issue of material fact as to whether Ray and Wolfinbarger are Ms. Martin's comparators which precludes summary judgment.

10

that an employee "was performing [her] job at a level that rules out the possibility that [she] was fired for job performance." *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st. Cir. 2003). To determine qualification, "a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 575 (6th Cir. 2003). "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id.* at 575-76. "Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576.

In support of summary judgment, Baptist relies on a line of cases beginning with *McDonald v. Union Camp Corp.*, in which the Sixth Circuit held that a plaintiff "must prove that he was performing his job 'at a level which met his employer's expectations'" to satisfy the qualification prong of his *prima facie* race discrimination case. [R. 48-1 at 9-10 (citing 898 F.2d 1155, 1160 (6th Cir. 1990) (internal citations omitted).] Under this standard, Baptist argues that, while employed in its cafeteria, Ms. Martin "received discipline for unsatisfactory attendance, admittedly used her cell phone while on the clock […], refused to perform all of her job duties, failed to assist adequately […], disappeared from her assigned work area without approval, was rude and disrespectful to supervisors, and recorded false information on a break sheet." [R. 48-1 at 9.] Each of these instances were documented by Baptist's human resources department. [R. 48-4.] Accordingly, Baptist argues that Ms. Martin did not perform at a level which met its expectations and that Ms. Martin's record fails to overcome the possibility that she was fired for inadequate job performance. [*See* R. 48-1 at 9-10.]

11

In opposition, Ms. Martin argues that she was "certainly no less qualified than her Caucasian counterparts who regularly" engaged in similar behavior. [R. 51 at 7.] Moreover, Ms. Martin cites Ciji Estill's affidavit, in which Estill praises Ms. Martin's job performance and contends that other employees at Baptist committed similar infractions as Ms. Martin without consequence. [R. 51 at 7; R. 51-5 at 2.] Finally, Ms. Martin argues that she cannot provide the Court with proof of her satisfactory job performance because Baptist failed to provide her performance reviews through discovery. [R. 51 at 8-9.] Ms. Martin does not dispute whether *McDonald* remains controlling.

Upon review, the Court finds that a genuine issue of material fact exists as to whether Ms. Martin was qualified for her job. As an initial matter, the Court concludes that *Wexler* is the controlling precedent in this matter, not *McDonald* and its progeny. Though other district courts have continued to apply the *McDonald* qualification standard post-*Wexler*, the Sixth Circuit made clear that *Wexler* altered its prior authority. *Compare, e.g., Smith v. Walle Corp.*, 62 F. Supp. 3d 587, 594 (E.D. Ky. Oct. 20, 2014) *with Wexler*, 317 F.3d 564, 575-76 ("Given the district court's confusion about what evidence was relevant to the question of whether Wexler was qualified, we take this opportunity to explicitly set forth what is required for a plaintiff to satisfy the qualification prong of the prima facie test"). The dissent in *Wexler* even more explicitly indicates that the Sixth Circuit altered the controlling law on qualification in the context of Title VII. *Id.* at 593 (J. Krupansky dissenting) ("Under prior Sixth Circuit authorities […]"; "the *en banc* majority has elected to alter the law of this circuit […]."). But, in overruling *McDonald*, the Sixth Circuit did not completely excise a plaintiff's history of bad work conduct from analysis under the qualification prong because it permits review of whether a plaintiff possesses "the required general skills" to remain employed in his or her role. *Wexler*, 317 F.3d

12

at 576. One's history of unsatisfactory conduct at his or her workplace seemingly falls into this category, especially considering that an employee's qualifications can falter over time. *See Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1219-20 (7th Cir. 1980) ("[t]o ignore the shifting nature of qualification from time to time would make the qualification requirement meaningless […].").

Having determined *Wexler* the appropriate precedent to apply, the Court holds that a genuine issue of material fact exists as to whether Ms. Martin remained qualified for her position in light of the amount of workplace behavioral history Baptist documented against her in the five months she was employed in its cafeteria. Though Ms. Martin does not provide a history of successes to counter Baptist's records documenting instances of poor behavior and job performance[3], she does cite to an affidavit of a co-worker who, though perhaps a biased witness, argues that she was good employee. [R. 51-5 at 1-2. ("Karen Martin […] who I have known my whole life […].")]. Baptist, however, does not contend that Ms. Martin was unable to serve as a cashier or that she did not possess the education or experience in her field required to remain employed in her role. Instead, Baptist contends that Ms. Martin's behavior, attendance issues, and other professional shortcomings render her unqualified to have remained employed there.

---

[3] Ms. Martin contends that Baptist failed to provide her performance reviews in discovery and that this failure renders it difficult for her to contest that she was unqualified. [R. 51 at 9.] A review of Baptist's discovery responses, however, indicates that Baptist believes that it has turned over all documents relevant to this litigation. [R. 51-8.] If Ms. Martin was not satisfied with Baptist's discovery efforts, action pursuant to Federal Rules of Civil Procedure 37 or 56(d) may have been appropriate avenues to consider. But, at this point in litigation, she has not satisfied the requirements of Rule 56(d), sought to compel Baptist to provide additional discovery, nor requested the filing of discovery sanctions. Additionally, both parties were informed how to proceed when a discovery dispute occurs by way of this Court's scheduling order. [R. 7 at 2.] Because the Court's guidance was not followed and because Ms. Martin has not sought relief through the Federal Rules of Civil Procedure, she has insufficiently established a discovery dispute that would require a stay of this Court's consideration of summary judgment.

13

Accordingly, Baptist relies solely on *Wexler*'s "required general skills" category in support of its position. [*See* R. 48-1 at 9-10.]

Based on the minimal briefing on this topic provided by either party, the Court finds that whether Ms. Martin's behavioral history at Baptist caused her to become unqualified to remain employed there when she was terminated remains a genuine issue of material fact that precludes summary judgment. This is especially true given that Baptist relies only on the "required general skills" category of *Wexler* and because the enforcement of workplace rules is often subjective and arbitrary—which an employer can sometimes "too easily [use to] mask discrimination." *McKinley v. Skyline Chilli, Inc.*, 2012 U.S. Dist. LEXIS 114020, at *12 (S.D. Oh. Aug. 14, 2012) (citing *Wexler*, 317 F.3d at 575).

**2**

Once the plaintiff establishes a *prima facie* case of discrimination the burden then shifts to the defendant employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Schoonmaker v. Spartan Graphics Leasing, LLC,* 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148 (2000)). Baptist contends that its policy of termination without notice upon theft of its property necessitated Ms. Martin's transfer. [R. 48-1 at 5, 10.] Because "violating company policy" is a legitimate non-discriminatory reason for termination, the burden shifts back to Ms. Martin, who must show that Baptist's explanation was merely pretext for intentional discrimination. *Id.*; *see also Bilak-Thompson v. Dollar Tree Stores, Inc.*, 293 Fed. App'x 380, 384 (6th Cir. 2008).

Sixth Circuit precedent establishes that a jury "may not reject an employer's nondiscriminatory explanation unless there is sufficient basis in the evidence for doing so" because "[t]o allow the jury to simply refuse to believe the employer's explanation would subtly,

14

but inarguably, shift the burden of persuasion form the plaintiff to the defendant[.]" *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).  Therefore, to rebut Baptist's explanation, Ms. Martin must demonstrate one of three things: (1) that Baptist's reason has no basis in fact; (2) that the proffered reason did not actually motivate the adverse action; or (3) that the proffered reason was insufficient to motivate the adverse action.  *See id.* at 1084.

But a plaintiff "must allege more than a dispute over the facts upon which [her] discharge was based.  [She] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (internal citations omitted).  "In order to determine whether the defendant had an 'honest belief' in the proffered basis for the adverse employment action, [the Court] looks to whether the employer can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision was made."  *Id.*  Further, in a circumstantial evidence case, "[i]t is well-established that a plaintiff may demonstrate pretext by producing 'evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.* at 497.

In this matter, there is no evidence that Baptist did not honestly believe that Ms. Martin engaged in pilfering or that pilfering is a sufficient ground for no-notice termination under Baptist's internal policy.  But a genuine issue of material fact about pretext is present because two of Ms. Martin's Caucasian co-workers, Gena Ray and Tracy Wolfinbarger, are either accused of pilfering or admit to pilfering but were not terminated.  Though the record is unclear as to whether Baptist was aware of Ray's accused actions or Wolfinbarger's admitted actions, the Court draws all inferences in favor of the non-movant at summary judgment.  Consequently,

the Court surmises that Baptist knew that Ray may have pilfered and that Wolfinbarger did pilfer and chose to not terminate them. Accordingly, there exists "evidence that other employees […] were not fired even though they engaged in substantially identical conduct" to Ms. Martin, and summary judgment is precluded.

**B**

Ms. Martin also argues that her race discrimination claim can proceed under a mixed-motive theory of discrimination. [R. 51 at 7-8.] Even if race was not the single motive for a discriminatory employment action, a plaintiff can still proceed on an employment discrimination claim if "race […] was a motivating factor for any employment practice, even though other factors also motivated the practice."[4] 42 U.S.C. § 2000e-2(m); *see also White*, 533 F.3d at 397. Further, "the *McDonnell Douglas/Burdine* burden-shifting framework does *not* apply to the summary judgment analysis of Title VII mixed-motive cases." *Id.* at 400.

Instead, "to survive a defendant's motion for summary judgment, a Title VII plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that (1) the defendant took an adverse employment action against the plaintiff; and (2) 'race, color, religion, sex, or national origin was *a* motivating factor' for the defendant's adverse employment action." *Id.* (internal citations omitted). "This burden of producing some evidence in support of a mixed-motive claim is not onerous and should preclude sending the case to the jury only where

---

[4] "The relatively lenient summary judgment standard for mixed-motive claims 'is counterbalanced by potential restrictions on plaintiff's recovery' under a mixed-motive claim. […] If a plaintiff proves that race was a motivating factor for an adverse employment action (thereby proving her mixed-motive claim), but the employer also provides, in response, that it 'would have taken the same action in the absence of the impermissible motivating factor,' the plaintiff's recovery is limited to (1) declaratory relief, (2) injunctive relief, and (3) attorney's fees and costs demonstrated to be 'directly attributable only to the pursuit of the claim under § 2000e-2(m)." *Hawkins v. Ctr. for Spinal Surgery*, 34 F. Supp. 3d 822, 835 n. 12 (M.D. Tn. July 29, 2014) (citing 42 U.S.C. § 2000e-2(m) and *Spees v. James Marine, Inc.*, 617 F.3d 380, 390 (6th Cir. 2010)).

16

the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim." *Id.* (internal citations omitted). "In order to reach a jury, the plaintiff is not required to eliminate or rebut all the possible legitimate motivations of the defendant as long as the plaintiff can demonstrate that an illegitimate discriminatory animus factored into the defendant's decision to take the adverse employment action." *Id.* at 401.

Here, there is no dispute that Ms. Martin's termination constitutes an adverse employment action. But, despite arguing that her action can proceed under a mixed-motive theory, Ms. Martin fails to substantially brief whether evidence exists that her race was a motivating factor in Baptist's decision to terminate her. But, on the same token, Baptist does not provide any briefing opposing Ms. Martin's mixed-motive assertion. Ultimately, because the burden of producing evidence in favor of a mixed-motive claim is "not onerous" the Court finds that a genuine issue of material fact exists as to whether Ms. Martin's race was a motivating factor in her termination. This decision is particularly guided by the Court's prior conclusion that a genuine issue of material fact is present regarding the sufficiency of Baptist's proffered legitimate non-discriminatory reason for terminating Ms. Martin. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.") (internal citations omitted).

### III

Ms. Martin succeeds in establishing the existence of genuine issues of material fact regarding the *prima facie* case of her race discrimination allegation. Similarly, Ms. Martin successfully establishes a genuine issue of material fact about whether her race was a motivating factor in Baptist's decision to terminate her. Accordingly, and the Court being otherwise

17

sufficiently advised, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment [R. 48-1] is **DENIED**.

This the 25th day of April, 2022.

Gregory F. Van Tatenhove
United States District Judge